UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN THOMAS BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 8-438-B-W |
| | ) | |
| WORLDWIDE LANGUAGE | ) | |
| RESOURCES, INC. | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

This action, brought by John Thomas Berry against Worldwide Language Resources,

Inc., was removed from the state court to this Court on the basis of diversity jurisdiction.

Pending is a motion to dismiss for lack of personal jurisdiction.  This is the second complaint by

Berry against WorldWide that has been removed to this court.  In the earlier actions, Civil No.

08-157-B-W, filed against Worldwide and Larry Costa, I recommended denying a motion to

dismiss for lack of personal jurisdiction and this court accepted that recommendation.  See Berry

v. Costa, Civ. No. 08-157-B-W, 2008 WL 2724822 (D. Me. July 10, 2008) (Kravchuk, Magis. J.,

rec. dec.), aff'd 2008 WL 3824771 (D. Me. Aug. 13, 2008) (Woodcock, Dist. J.).  That action

was subsequently dismissed on a motion by the defendants because Berry failed to effectuate

service.

This time Berry's action is filed only against WorldWide but the complaint is over the

exact same course of conduct.  Berry is suing for alleged breach of contract/promissory estoppel,

fraud, negligence/negligent misrepresentation, intentional or negligent infliction of emotional

distress, defamation, and "malice" apropos his former employment with WorldWide.  Berry

alleges that while he was working for WorldWide in Afghanistan he refused requests by

WorldWide to commit or to not disclose a series of fraudulent and illegal acts regarding

WorldWide's contractual relationship with the United States government and military, including

the multiple billing of translators, the intentional misclassification of linguists, and the use of

incompetent translators.

## DISCUSSION

When facing a motion to dismiss for lack of personal jurisdiction under Federal Rule of

Civil Procedure 12(b)(2), it is Berry who bears the burden of establishing that personal

jurisdiction is proper.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).

When an evidentiary hearing is not held to determine whether personal jurisdiction exists -- and

this instance I do not think that the Court would be well served by such an exercise -- the

plaintiff must make a prima facie showing of jurisdiction by "citing to specific evidence in the

record that, 'if credited, is enough to support findings of all facts essential to personal

jurisdiction.'"  Snell v. Bob Fisher Enter., Inc., 115 F. Supp.2d 17, 20 (D. Me. 2000) (quoting

Boit v. Gar-Tec Prod., 967 F.2d 671, 675 (1st Cir. 1992)).[1]

> "Because this is a diversity case," this Court explained in Cormier v. Fisher,
>
> the Court's authority to exercise personal jurisdiction over a non-resident
> defendant is limited by the state of Maine's long-arm statute. See Am. Express
> Int'l., Inc. v. Mendez-Capellan, 889 F.2d 1175, 1178 (1st Cir.1989). As Maine's
> long-arm statute permits jurisdiction over non-resident defendants to the "fullest
> extent permitted by the due process clause of the United States Constitution, 14th
> amendment", 14 M.R.S.A. § 704-A(1), the inquiry focuses on whether the
> assumption of jurisdiction would violate due process.

---

[1]      When determining whether the plaintiff has made the requisite prima facie showing, the court considers the
pleadings, affidavits, and exhibits filed by the parties.  Snell, 115 F. Supp.2d at 20.  For purposes of such a review,
the plaintiff's properly supported proffers of evidence are accepted as true and evidentiary disputes are resolved in
favor of the plaintiff.  However, unsupported allegations in the pleadings need not be credited.  Id.

404 F.Supp.2d 357, 360 (D. Me. 2005);  see also Heller v. Allied Textile Cos., 276 F. Supp. 2d

175, 182 (D. Me. 2003).  "Due process" Cormier continued,

> requires that the defendant have "minimum contacts with [the forum] such that
> the maintenance of the suit does not offend traditional notions of fair play and
> substantial justice.' " Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
> (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). See also Keeton v.
> Hustler Magazine, Inc., 465 U.S. 770, 780-81 (1984); World-Wide Volkswagen
> Corp. v. Woodson, 444 U.S. 286, 292 (1980). Minimum contacts are determined
> by whether the defendant "purposefully avails [himself] of the privilege of
> conducting activities within the forum State, thus invoking the benefits and
> protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475
> (1985)(citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

404 F.Supp.2d at 360.

This is a case that turns on specific jurisdiction rather than general jurisdiction, and this

requires that "the claim 'relates sufficiently to, or arises from, a significant subset of contacts

between the defendant and the forum.'"  Id. at 361 (quoting Phillips Exeter Acad. v. Howard

Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir.1999) and citing Donatelli v. Nat'l. Hockey

League,  893 F.2d 459, 462-63 (1st Cir.1990)); see also Platten v. HG Berm. Exempted Ltd., 437

F.3d 118, 135 (1st Cir. 2006).  WorldWide's forum contacts must be purposeful in order to

justify an exercise of personal jurisdiction.  Platten, 437 F.3d at 135.

When this Court's subject matter jurisdiction is based upon diversity of citizenship, the

federal court asserts personal jurisdiction in accordance with both state law and the Fourteenth

Amendment's due process clause, just as if it were a state court.  Me. Helicopters, Inc. v. Lance

Aviation, 563 F.Supp.2d 292 (D. Me. 2008).  With regards to Maine's long-arm statute, Cormier

summarized:

> The Maine Law Court has determined that "before exercising its
> jurisdiction over an out-of-state defendant, the court must conclude that (1) Maine
> has a legitimate interest in the subject matter of this action; (2) the defendant, by
> its conduct, should reasonably have anticipated litigation in Maine; and, (3)
> exercise of jurisdiction by Maine's courts would comport with traditional notions

of fair play and substantial justice." Frazier v. BankAmerica Int'l., 593 A.2d 661, 662 (Me.1991). Once the Plaintiff demonstrates that Maine has a legitimate interest in the controversy and that the requisite minimum contacts exist such that the defendant should reasonably expect litigation in this state, the burden shifts to defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

202 F. Supp. 2d at 361. See also  N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (observing that even if the defendant's forum contacts are purposeful, there are certain circumstances in which an exercise of personal jurisdiction over the defendant will not be reasonable or, alternatively stated, will be inconsistent with "traditional notions of fair play and substantial justice.") (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

Because Maine's three-part test differs in its emphasis from the First Circuit test, and because both methods of analysis presumably comply with Fourteenth Amendment due process concerns, it is important in a diversity case, when this Court becomes the functional equivalent of the state court, to make sure that a Maine court would exercise jurisdiction under the Law Court's formulation.  Me. Helicopters, 563 F.Supp.2d at 295-96 (collecting and analyzing decisions of the Maine Law Court applying the three-part test outlined above).

The parties' showings this second time around are substantially reliant on the same factual footing.  For its part, WorldWide's support for its motion to dismiss in the earlier suit was:

In support of their motion to dismiss the defendants have filed three affidavits, including the affidavit of Larry Costa. Costa avers that in 2006 WorldWide's principal place of business was Rumford, Maine, and it continued to do business there until May 1, 2007. The company has had no operations in Maine since then. In the Spring of 2006 Berry, in his capacity as a military recruiter, contacted Costa by telephone in Maine and tried to recruit him for reserve military duty. During the course of this conversation Berry learned about Costa's work with WorldWide and he asked Costa if he could submit a resume to Costa's company. Costa told him that WorldWide was always happy to receive the resumes of applicants with military backgrounds. In September 2007, when Costa was reviewing paperwork, he noted that WorldWide had in fact received a

4

resume from Berry. Costa contacted Berry and advised him WorldWide had
relocated to North Carolina. Berry indicated he was still interested in a position
and arrangements were made to fly him to North Carolina for a job interview.
Berry interviewed with several key people but ultimately he was called and told
that no offer would be made. Berry then contacted Costa by means of a lengthy e-
mail and pleaded for a job. He was subsequently hired by WorldWide. Berry went
to North Carolina and signed an employment contract that states it is governed by
North Carolina law. Berry was deployed to Afghanistan and, thereafter, all further
communications with him were made in and directed to him in Afghanistan.

       Defendants also supply the affidavits of Gene Battistini and Mary
Arsenault. Battistini is a WorldWide employee who confirms the salient facts
about WorldWide's corporate move to North Carolina and provides some detail
regarding the circumstances of Berry's employment difficulties in Afghanistan.
Ms. Arsenault indicates that she works at the office of a different business located
on River Street in Rumford, Maine, near where WorldWide once had an office.
On April 25, 2008 someone left a copy of a summons directed to Larry Costa,
personally, with her. Arsenault goes on to aver that she has no knowledge that
Costa ever lived at that address, that the address is not currently a business
location for WorldWide, and that she is not an authorized agent for service of
process.

Berry, 2008 WL 2724822 at *2 (record citations omitted).

In initiating this motion to dismiss, WorldWide's motion and memorandum do not

attempt to distinguish the merits of this motion from its parallel efforts in the earlier suit.  (Mot.

Dismiss at 1-2, Doc. No. 10; Mot. Dismiss Mem., Doc. No. 11.)  With respect to the factual

support, this time around the defendants have not filed the Arsenault affidavit.  The affidavit of

Gene Battistini omits one paragraph and adds another but the absence and presence do not alter

the specific personal jurisdiction analysis.[2]  Specifically, in Battistini's new affidavit there is the

following new paragraph:

Since June 1, 2007, World Wide has operated exclusively out of its North
Carolina Office.  World Wide manages field operations of its linguists deployed
overseas from North Carolina, and negotiates its contracts with customers and
vendors, as well as its linguists, from North Carolina.  World Wide also manages
its sales and business development from North Carolina, and corporate purchases
are made from that location.

---

[2]    Indeed it would be suspicious if the affidavits did contain game-changing representations given that we are
talking about the exact same employment relation as with the first suit.
.

(Civ. No. 08-438-B-W Battistini Aff. ¶ 6, Doc. No. 10-3.)  WorldWide adds to the affidavit a paragraph describing Berry's performance problems upon his arrival in Afghanistan a representation that Berry "physically assaulted a co-worker."  (Id. ¶ 7.)  And WorldWide omits a paragraph addressing Battistini's unawareness of any summons directed at WorldWide.  (Civ. No. 08-157-B-W Battistini Aff. ¶ 9.)

Larry Costa's new affidavit does not contain Paragraph 3 of the first affidavit, which stated:  "I was previously a legal resident of the State of Florida.  I was a legal resident of the State of Florida in and about March 2006.  I am currently in the process of relocating to New Hampshire."  (Civ. No. 08-157-B-W Costa  Aff. ¶ 3, Doc. No. 5-3.) The last clause of a statement of what is now Paragraph 6 in the newest Costa Affidavit is "ended the call" rather than "and the call ended."  (Civ. No. 08-438-B-W Costa Aff. ¶ 6, Doc. No. 10-4.)  In Paragraph 9 Costa changes, "Berry interviewed several key people in North Carolina, including …" to Berry interviewed with several key people, including …," omitting "In North Carolina."  (Id. ¶ 9)(emphasis added).  The final sentence of Paragraph 10 read, "Berry then sent a lengthy e-mail to me in North Carolina." (Id. ¶ 9.) The earlier version of this statement ended with: "Berry then sent a lengthy e-mail to me with my business based in North Carolina." (Civ. No. 08-157-B-W Costa  Aff. ¶ 11.)  Paragraph 8, former Paragraph 9, has two minor additions, and Paragraph 11, former Paragraph 12, uses "Berry" rather than "The plaintiff." (Compare Civ. No. 08-438-B-W Costa Aff.  ¶¶ 8 & 11 with Civ. No. 08-157-B-W, Costa  Aff. ¶¶ 9 & 12 .)

As WorldWide points out, Berry is relying on the exact same two affidavits submitted in response to the motion to dismiss for lack of jurisdiction in the earlier action.  In that earlier suit I summarized the factual basis for his opposition to the motion to dismiss as follows:

6

Berry has filed a responsive affidavit. He avers that on at least three occasions he received telephone calls from Larry Costa and other representatives of WorldWide soliciting his employment with their company. Berry says he never solicited employment but rather was solicited by defendants by means of telephone calls placed by them to his home in the State of Maine. He relates that he was also telephoned and e-mailed in Maine specifically to discuss and communicate the terms of employment and to arrange logistics for his travel to North Carolina. His travel to and from Maine to North Carolina was paid for by WorldWide. Berry was advised by Costa that Costa maintains a home in the State of Maine and that WorldWide's offices and operations for many years had been based in the Rumford area.

Berry's counsel has also filed his own affidavit. According to counsel's research in the Oxford County Registry of Deeds, defendant Lawrence Costa owns two parcels of real estate in the Town of Andover and both Costa and WorldWide owned other parcels of land in the Rumford area until 2005. Counsel also avers that WorldWide continues to be chartered as a Maine foreign business corporation and maintains a registered agent in the State of Maine.  In the past four years both defendants have either sued others or been sued by others in the courts of Maine on at least four occasions.  Counsel also notes that as of the present he knows of no one resident in North Carolina who is likely to testify in this matter.

Berry, 2008 WL 2724822 at 2 -3 (record citations omitted).

Berry argues in his opposition to the motion to dismiss that this Court should deny the motion to dismiss based on a theory that the law of case doctrine applies to this dispute even though there are two different cases at issue.  WorldWide responds that this doctrine does not apply in situations such as this where there are two discreet cases.  It stresses this Court's discretion to revisit its earlier determination, whether that determination was made in the same case or not.  Neither party raises the question of whether there is issue preclusion at play here, despite the fact that that doctrine definitely is meant to apply across case boundaries. WorldWide does argue that a ruling on a motion to dismiss does not carry the same preclusive properties as, say, one on summary judgment or after a trial.

I do not think that either party is particularly persuasive.  But the bottom line is that even if, as WorldWide argues,  this court can revisit the merits of the personal jurisdiction issue in this

case, there is nothing in the present record that would justify serious re-inquiry on the court's

part.

In the recommended decision I reasoned:

The complaint in this case alleges both tort and contract claims, but the pleadings emphasize contract formation as the basis for Maine's jurisdiction. This makes sense because Berry would be hard pressed to argue that his tort injuries would not have occurred "but for" the defendant's Maine based activities. United Elec., Radio & Mach. Workers, 960 F.2d at 1089. Instead, he argues that the defendants' solicitation of him in Maine and their subsequent e-mails to him led to the contract's formation and demonstrate that the defendants were transacting business in Maine. This approach accords with First Circuit law. See Hahn v. Vt. Law Sch., 698 F.2d 48 (1st Cir.1983) (holding that a law school's purposeful actions of mailing application information and an acceptance letter to an applicant in Massachusetts were sufficient, without more, under the Massachusetts long-arm statute and, because of other activities generally associated with Massachusetts, were sufficient to comport with due process standards as well). As was the case in Hahn, the record here reflects a great deal of background noise consisting of associations with the forum state. The solicitation of Berry was no more an isolated contact with Maine than was the law school's solicitation activity in Hahn. The defendants clearly were transacting business in Maine up until June 2007 and even after that date it appears, based upon the record developed here, that they kept an agent in Maine for purposes of service until some unknown date prior to June 21, 2008. Additionally, when the process in this case was mysteriously delivered to someone in Rumford, Maine, allegedly not connected with this corporate entity or Costa, that process nevertheless ended up with exactly the correct defendants.

The next step of the analysis requires the Court to determine whether the defendants "should reasonably anticipate being haled into court" in Maine. World-Wide Volkswagen, 44 U.S. at 297. In other words, the Court must be satisfied that the defendants purposefully availed themselves of the benefits and the protections of Maine's laws. This step is Berry's weakest link because the evidence plainly suggests that WorldWide, at least, has done everything it can to disassociate itself from the benefits and protections of Maine law. It has suspended its corporate status in Maine and moved its physical plant to North Carolina. In effect, WorldWide has attempted to purposefully un-avail itself of Maine's benefits and protections. Additionally, this case is unlike Maine Helicopters, supra, or Enqueue, Inc. v. Data Management Group, Inc., Civ. No. 07-38-B-W, 2007 U.S. Dist. Lexis 59737, 2007 WL 2343653 (D.Me. July 30, 2007) (Mag. J. Rec. Dec.), affirmed, 2007 U.S. Dist. Lexis 74823, 2007 WL 2916537 (Oct. 5, 2007), where the defendants could have anticipated that problems associated with contract performance would arise in the forum and thus could have anticipated that the party with whom they had contracted would bring suit there. Here, the defendants had no reason to anticipate that they would have

any further forum contact after the formation of this contract because it was contemplated that the contract would be performed in Afghanistan. The prima facie case put forth by Berry does not even suggest that the defendants would have had reason to anticipate that Berry would return to Maine after the contract was completed. Indeed, the record suggests that he was scheduled to leave Maine and report to active duty in the military.

In my view, what allows Maine to assert personal jurisdiction over the defendants is not just the conduct of reaching into Maine to make this employment contract, but also the timing of that conduct coming right on the cusp of when WorldWide was in the process of removing itself from Maine. These contacts with Maine during the formation of the employment contract were not "merely random, isolated or fortuitous contacts." Hannon v. Beard, 524 F.3d 275, 284 (1st Cir.2008) (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir.2007)). In the four years leading up to the litigation, the defendants appeared in at least four separate court cases in Maine and owned property in Maine (Costa continues to do so). WorldWide also maintained a registered agent for service and a physical presence in the State, and enough of a continuing presence that a woman seated in an office in Rumford near where they used to do business was able to provide them with service documents. Furthermore, when soliciting Berry to make this contract, according to Berry, the defendants noted their long-time ties to Maine. On these facts, it comports with constitutional standards of due process to say that the defendants purposefully availed themselves of the benefits and protections of Maine law when they entered into the contract with Berry in the summer of 2007. Alternatively, if the Court should find Berry's showing on relatedness and purposeful availment to be close but non-convincing, a strong showing on the gestalt factors may suffice to tip the scale in favor of exercising jurisdiction over the defendant. Nowak [v. Tak How Investments, Ltd], 94 F.3d 708,] 717 [(1996)].

On that note, I turn to the "gestalt factors." There is nothing unfair about the burden of requiring Costa and WorldWide to defend the suit in Maine. Costa lives in close proximity to Maine. Since Costa now lives in New Hampshire and has longstanding ties to Maine, including the continued ownership of real property, his burden of appearing in Maine is minimal. The most obvious alternative forum, in any event, is Massachusetts, where WorldWide is incorporated, a forum that would probably be equally inconvenient for both parties, but one likely to have more appeal for Berry than North Carolina. Berry, as the plaintiff, has an interest in obtaining convenient and effective relief and none of the other available forums would be likely to provide as great a convenience to him as Maine. There has been no showing made that essential witnesses are currently located in North Carolina or Massachusetts. If a Rule 30(b)(6) deposition becomes necessary during discovery, Berry may well be required to travel to corporate headquarters to conduct it, reducing the burden on WorldWide. Both North Carolina and Maine have an interest in this litigation. While it is true that North Carolina is now the site of WorldWide's corporate headquarters, Maine enjoyed that distinction in the very recent past and has at least a short term interest in insuring contract compliance by companies that have

9

done business within its borders. On balance, the application of the five gestalt factors would favor the exercise of jurisdiction in Maine.

Berry, 2008 WL 2724822 at 5 -6 (footnote omitted). Of relevance to the circumstance that Berry has not named Costa as a defendant this go around is the following footnote:

> It is somewhat frustrating that the complaint speaks in terms of the defendants in each and every count, including the breach of contract/promissory estoppel count. As I indicated above, I have treated Costa and WorldWide jointly because both parties have used that approach in their pleadings and I can see no practical way to parse the contacts separately myself. This is not a case where the complaint provides differing allegations for one defendant from the other, although it seems unlikely to me that the contract in question was signed by Costa individually. Costa's contacts with this forum, including his continuing ownership of property and the mysterious relationship with the woman in the storefront office in Rumford, coupled with his reliance upon his Maine presence in the course of soliciting Berry's employment, almost invite one to explore a general jurisdiction analysis, but the existing record is insufficient to undertake such a quest.

Id. at 6 n.1.

So, it is unnecessary in this situation to have the resolution of this motion turn on the questionable applicability of the law of the case doctrine.  Given that the parties are essentially resting on the same factual support for their positions, it is possible to look at the earlier dispute and say that the present case is so indistinguishable from the earlier one that the court should follow the reasoning in that case as well as in this case and arrive at the same result.[3]  It may well be that on the strength of WorldWide's argument that the Court wishes to revisit the question of the exercise of personal jurisdiction over WorldWide (Costa not now being a defendant)[4] but I

---

[3]    This Court has already considered the issue of the corporate status of WorldWide (Reply Mem. at 2 n.1, 3 n. 2; Doc. 14-2); it was one of WorldWide's arguments in its reply and the objection to the recommended decision (Civ. No. 08-157, Doc. Nos. 12, 12-2, 15, 15-3).

[4]    WorldWide maintains in its reply memorandum:
> WorldWide respectfully submits that to deprive it of a meaningful review of personal jurisdiction, even in the context of the non-suit of its alleged agent Costa, would be just such a manifest injustice. Plaintiff contacted Costa for his own purposes, wholly separate from Costa's relationship to WorldWide. In the current context, in which Costa is not a defendant in

10

cannot find anything in these filings to serve as a basis for recommending that the Court do so in

light of the fact that the Court has already made a determination on a factual record that is

materially the same that it can exercise personal jurisdiction over WorldWide.[5]

## Conclusion

Based upon the foregoing, I recommend the motion to dismiss be denied.

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, and request for oral argument before the
district judge, if any is sought, within ten (10) days of being served with a copy
thereof. A responsive memorandum and any request for oral argument before the
district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 17, 2009

---

this action, WorldWide submits that applying the Law of the Case doctrine to bar any substantive
analysis of personal jurisdiction would work a deprivation of due process to the defendant.
(Reply Mem. at 6, Doc. No. 14.)

[5] This is not the only dispute, removed from state court, involving WorldWide and/or Costa aired in this
court. (See Civil No. 06-166-P-S; Civ. No.07-48-P-S; Civ. No. 05-38-P-H.)