UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN THOMAS BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08-cv-00438-JAW |
| | ) | |
| WORLDWIDE LANGUAGE RESOURCES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON RENEWED MOTION TO SANCTION PLAINTIFF**

Consistent with the jury verdict, the Court concludes that WorldWide Language Resources, Inc. (WorldWide) failed to demonstrate that John Thomas Berry committed perjury and tampered with a witness. The Court denies WorldWide's renewed motion for sanctions.

**I.   STATEMENT OF FACTS**

   **A.   An Overview**

John Thomas Berry's lawsuit against his former employer, WorldWide Language Resources, Inc., has been especially contentious. After a period of discovery marked by acrimony and after a three-day trial, on March 9, 2011, a federal jury found that Mr. Berry had proven his promissory estoppel claim against WorldWide and awarded him Twenty-Five Thousand Dollars in damages. *Verdict Form* (Docket # 138) (*Verdict*). On March 10, 2011, the Court reduced the verdict to

judgment.[1]  *J.* (Docket # 140).  On April 11, 2011, WorldWide renewed an earlier motion to sanction Mr. Berry.  *Def.'s Renewed Mot. to Sanction Pl. for his Perjury and Witness Tampering Concerning a Relevant Trial Issue* (Docket # 144) (*Def.'s Mot.*).  On April 25, 2011, Mr. Berry responded.  *Pl.'s Opp'n to Def.'s [Renewed] Mot. for Sanctions* (Docket # 145) (*Pl.'s Opp'n*).

The primary focus of WorldWide's motion is the assertion that Mr. Berry committed perjury when he testified about his relationship with Marianna Chachkova.  *Def.'s Mot.* at 1-20.  WorldWide emphatically believes that Mr. Berry and Ms. Chachkova were married and WorldWide says that, in his employment application to WorldWide, Mr. Berry lied when he swore under oath that he had never been married.  *Id.* at 2.  WorldWide goes on to say that "Plaintiff's lie in his security application about his prior marriage, the truthful completion of which was a condition precedent to entering into employment with WorldWide, was a falsehood that allowed Plaintiff to obtain his security clearance through the Department of Security Services and therefore induced WorldWide to hire Plaintiff for his job overseas." *Id.*

To prove its charge, WorldWide says that in an interview with United States immigration officials and in a tax return filed with the Internal Revenue Service, Mr. Berry represented that he and Ms. Chachkova were, in fact, married.  *Def.'s Mot.* at 1-10.  Furthermore, WorldWide claims that directly after his deposition, Mr. Berry engaged in witness tampering when he contacted Marianna Chachkova's

---

[1] Following a motion to correct clerical error, the Court issued an amended judgment on March 28, 2011.  *Am. J.* (Docket # 143).

2

current husband, Paul Russo, to tell him what he had said in his deposition concerning the Chachkova marriage in an effort to "make sure we're [Berry, Chachkova and Russo] on the same page." *Id.* at 11 (quoting *Aff. of Christopher T. Vrountas* Attach. 8, *Dep. of Paul Russo* 20:4-6 (Docket # 43)) (*Russo Dep.*). Because of what it contends is his disrespect for the judicial system and to deter his future misconduct, WorldWide demands that the Court sanction Mr. Berry. *Id.* at 19-20. Mr. Berry responds that the exact nature of his relationship with Ms. Chachkova remains "murky," that he did not tamper with the anticipated testimony of Mr. Russo, and that the jury rejected the essence of WorldWide's allegations. *Pl.'s Opp'n* at 1-6.

### B. Factual Background

#### 1. A Complicated Man

By Complaint dated December 2, 2008. John Thomas Berry filed suit, alleging—under a variety of legal theories—that WorldWide, his former employer, improperly terminated his employment.[2] Central to this dispute is who John Thomas Berry is. By any measure, this is not a simple question: Mr. Berry is a complicated man. Born to a military family in Bangor, Maine in 1971, he grew up in Bangor and started college in Rhode Island. *Tr. of Proceedings* 23:3-11; 24:3-5 (Docket # 156) (*Tr. I*). He went to Russia, where he enrolled as a student at the University of Moscow; after he graduated from the University of Moscow, he attended Bates College in Maine and graduated in 1995 . *Id.* 23:24-24:19; 27:1-2.

---

[2] Mr. Berry filed suit in Waldo County Superior Court and WorldWide removed the lawsuit to this Court under this Court's diversity jurisdiction. *Notice of Removal* (Docket # 1); *id.* Attach. 2, *Compl.*

3

In the fall of 1997, Mr. Berry enlisted in the United States Army. *Id.* 25:3-4, 20-25. His first tour of duty ended in 1998 and he left the active Army then. *Id.* 26:1-19.

After his first tour of duty, he returned to Russia, where he worked as a linguist, taught English, and held a number of jobs from 1998 to 2000. *Id.* 26:20-27:25. He then returned to Maine, but not alone. *Id.* 28:1-24. With him, he brought Marianna Chachkova, a woman he had met in Russia. *Id.* 28:18-24. After a time in Maine, they moved to Florida, where they stayed for two and a half to three years. *Id.* 28:1-29-6.

In late 2003 to early 2004, Mr. Berry received a call from the Army, asking if he would re-enlist. *Id.* 30:17-31-12. Mr. Berry agreed to do so, rejoined the Army, and was placed in the reserve component until he could complete Officer Candidate School (OCS); he graduated from OCS on May 5, 2006 and in 2007 was commissioned as an officer in the Army. *Id.* 31:12-24. Unfortunately, however, during OCS, he sustained an injury and after he completed the course, he was diagnosed with a collapsed vertebra. *Id.* 32:14-33:25. He returned to Maine for medical treatment and the Army assigned him to the University of Maine ROTC battalion; he was serving there when he contacted the president of WorldWide, Larry Costa. *Id.* 34:1-4; 37:12-38:7.

Mr. Berry is highly intelligent. He has a facility with language; in addition to English, he speaks Serbian, Croatian, Russian, French, German, Arabic, English, Spanish, and some Italian. *Tr. I* 25:11-19. Despite this obvious intelligence, Mr.

4

Berry's testimony periodically wandered and lapsed into confusion.  For example, at trial, he was asked about re-enlisting in the Army and attending OCS:

> Q. So tell us what - - how is it that you end up signing a contract with WorldWide in November 2007?
>
> A.  Counselor, that has - - begs the kind of question we have to go back to 2004 or so when I received a phone call from the military at that juncture. Then remember, anybody remembers we were heavily involved in Iraq.  It wasn't going well, and they - - the military, the Army, needed officers, soldiers, badly.  And I received a phone call from essentially a recruiting command asking me if I would consider coming back.
>
> Q. In 2004?
>
> A. In 2003 or - - late '3 to '4.
>
> Q. And what do you do?
>
> A. I went back.  And so in November 2000 - - October or November - - I have the papers in my briefcase, I can pull them out - - I rejoined the United States Army and was put into the reserve component until I could attend [OCS], which I did in late 2000 - - well, 27-week - - 26-week course all together so in - - the fall of 2007 - - excuse me, fall of 2005 to the summer, I graduated May 5th, 2006.

*Id.* 30:17-31:12.  Mr. Berry explained that he was taking medication for his physical injuries and it was causing memory problems.  *Id.* 29:4-6.  As in many cases, the jury was presented with the difficult task of making credibility determinations.  Here, Mr. Berry's unusual presentation and WorldWide's forceful accusation that he was dissembling made those determinations even more onerous.

  **2.** **WorldWide and John Berry**

WorldWide is a business that provides language services primarily to the military.  *Trial Tr. II* 141:22-42:4.  When Mr. Berry was at the University of Maine,

5

he learned about WorldWide, then headquartered in western Maine. *Id.* 36:1-13. His ROTC assignment at the University was time-limited and he was concerned that he would "come off orders." *Tr I.* 38:2-12. Thinking that his military background and linguistic ability would make him an attractive hire, Mr. Berry contacted Larry Costa, the President of WorldWide, and, on November 20, 2007, he signed on with WorldWide and shortly thereafter was flown to Afghanistan. *Id.* 36:18-38:17; 55:24-58:6; *Joint Ex.* 4.

### 3. A Question of Marriage

The WorldWide–Berry contract stipulated, among other things:

> Possession of at least an interim secret clearance from DSS shall be a precondition for employment with the company under this agreement.

*Joint Ex.4* at 1. To secure or maintain this security clearance, Mr. Berry completed a Standard Form 86, a security clearance application. *Tr. I* 115:6-14; *Joint Ex.* 3. Standard Form 86 asks in Section 15 about the citizenship of former spouses:

> **Section 15: Citizenship of Your Relatives and Associates**
>
> If your current spouse is a U.S. citizen by other than birth, or an alien residing in the U.S., provide a Proof of Citizenship Status entry below.
>
> Proof of Citizenship Status
>     (*No Entry Provided*)
>
> Former Spouse(s) (Not Applicable: (x))
>     (*No Entry Provided*)

*Joint Ex.* 3 at 195.

WorldWide has maintained that Mr. Berry's representation in Standard Form 86 that he did not have a former spouse was a lie and he was, in fact,

previously married to Ms. Chachkova. To prove its contention, WorldWide pointed to photographs of Mr. Berry wearing a wedding ring, a wedding license, the deposition testimony of Ms. Chachkova, the deposition testimony of Abigail Stoddart (Mr. Berry's current wife), a Florida divorce judgment, and Mr. Berry's 2002 tax return. *Def.'s Mot.* at 5-11. WorldWide also points to Mr. Berry's repeated sworn denials of marriage to Ms. Chachkova, including his deposition testimony, his answers to interrogatories, and his trial testimony as well as his reluctant production of copies of his tax returns. *Id.*

### 4. Witness Tampering

WorldWide deposed Mr. Berry for three days. *Id.* at 6. WorldWide claims that after the first day, Mr. Berry telephoned Ms. Chachkova's husband, Paul Russo, informed Mr. Russo about his lawsuit against WorldWide, confessed that he lied during his deposition when he said that he never married Ms. Chachkova, commented that he had called Mr. Russo to make sure they were all on the same page, and observed that WorldWide could cause trouble for Ms. Chachkova in light of her immigration status. *Id.* at 11.

### 5. John Berry's Response

In the face of WorldWide's allegations, Mr. Berry characterizes his relationship with Ms. Chachkova as "murky" and maintains that he never married her. *Pl.'s Resp.* at 3-4. As evidence he observes: that the Russian wedding license does not contain his signature; that there were no photographs or video of the Russian wedding or reception; that only three photographs were admitted into

7

evidence of Mr. Berry wearing a wedding ring; that Mr. Berry was wearing the wedding ring on his right, not left hand; that other than 2002, Mr. Berry did not file a joint/married tax return with Ms. Chachkova and that he filed the 2002 tax return on the advice of his tax attorney; that while supposedly married to Mr. Berry, Ms. Chachkova entered the United States on a tourist visa instead of as Mr. Berry's spouse; that in his cover letter to Ms. Chachkova conveying his final "divorce" financial statement (filled out entirely with zeros), he noted to Ms. Chachkova that he was terminating any bond "either real or imagined"; and that Ms. Chachkova said that she returned her wedding band to Mr. Berry immediately after the INS hearing. *Id.* at 3-4.

### 6. Heads Up

Mr. Berry dismisses the "nefarious picture" that WorldWide paints about his telephone call to Mr. Russo. *Id.* at 6. He insists that he called Mr. Russo only to "give him a 'head's up'" about the lawsuit and the fact that WorldWide might be contacting him, and to provide some context. *Id.* Mr. Berry also points out that Mr. Russo's deposition was not admitted into evidence and that Mr. Russo himself never appeared in court. *Id.* He concludes that the factual disagreement between deposition testimonies is "not sufficient for the Court to find any witness tampering on the part of Lt. Berry." *Id.*

## II. DISCUSSION

### A. The Jury Verdict

In evaluating WorldWide's motion, the Court does not begin with a blank slate. The jury has rendered a verdict and the court must accept the jury determinations in this case. U.S. CONST. amend. 7 ("[T]he right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law"); *Harding v. Cianbro Corp.*, 473 F. Supp. 2d 89, 95 (D. Me. 2007). In its verdict, the jury found in favor of Mr. Berry on the breach of contract and promissory estoppel theories. *Verdict* at 1-2. Specifically, the jury found that WorldWide had not proven that it had been fraudulently induced to enter into the contract with Mr. Berry. *Id.* at 1. Since WorldWide's fraud defense was premised on the contention that Mr. Berry had lied about his marriage to Ms. Chachkova and had fraudulently induced WorldWide to hire him, *Def.'s Mot.* at 2, the jury's rejection of WorldWide's fraud defense must mean that it concluded that WorldWide had not proven that Mr. Berry lied on the security application about his marriage to Ms. Chachkova.

**B. The Trial Evidence**

Whether Mr. Berry was in fact married to Ms. Chachkova was squarely before the jury. The security questionnaire—Standard Form 86—was admitted into evidence, *Tr. I* 52:25-53:4. WorldWide extensively cross-examined Mr. Berry on whether he lied about his marriage to Ms. Chachkova, including specifically the assertions it is now making in its motion for sanctions: the 2002 tax return, Mr. Berry's deposition testimony, the divorce documents, his email to Paul Russo, and photographs of Mr. Berry with a ring on his right hand. *Id.* 140:20-162:24; *Tr. III*

9

99:11-103:12. WorldWide also introduced by deposition the testimony of Ms. Chachkova in which she testified that she married Mr. Berry. *Ct. Ex.* 102 (*Dep. of Marianna Chachkova*).

Mr. Berry testified at length about his relationship with Ms. Chachkova. He explained that he liked her very much, that she had led a tough life in Russia, that Russian law stipulates that there must be a ninety-day waiting period between a marriage application and a marriage, that he did not want to wait the ninety-day period, that when she came to the United States, she came on a tourist visa, not as his wife, that he wore a wedding ring on his right hand in order to make her feel loved, and that they were not married under Russian law. *Tr. III* 89:10-97:5. Mr. Berry also explained that his reluctance to marry Ms. Chachkova stemmed from her continual abuse of alcohol and from the legal requirement that if she came to the United States as his wife, he would have been obligated to support her financially. *Id.* 90:17-91:16. He explained his 2002 tax filing as consistent with legal advice he had received. *Tr. I* 147:10-22.

The Court agrees with Mr. Berry that whether he was in fact married to Ms. Chachkova is indeed murky. Weighing the evidence, the jury concluded that WorldWide had not demonstrated that Mr. Berry had fraudulently induced it to enter into the employment contract and consistent with the jury verdict, the Court applies the jury finding to WorldWide's motion.

### C. *Jones v. Clinton*

Citing *Jones v. Clinton*, 57 F. Supp. 2d 719 (E.D. Ark. 1999), WorldWide contends that the jury outcome is "irrelevant to the issue of sanctions." *Id.* at 2. WorldWide says that sanctions may be awarded even though the party who engaged in the sanctionable conduct was successful in the underlying lawsuit and it further argues that it is more important that the Court impose a sanction when the offending party is victorious because otherwise "Plaintiff would pay absolutely no consequence for his perjury and witness tampering." *Def.'s Mot.* at 2.

In *Clinton*, however, the district court previously had determined that the President William Clinton had "violated this Court's discovery Orders by giving false, misleading and evasive answers that were designed to obstruct the judicial process, and that sanctions must be imposed." *Jones*, 57 F. Supp. 2d at 720. Here, unlike *Jones*, the Court has not already determined that Mr. Berry committed perjury or tampered with a witness. Although the Court agrees with WorldWide that the judicial authority to impose sanctions is not contingent upon the outcome of a lawsuit, a preliminary question is whether Mr. Berry engaged in sanctionable conduct to begin with. On this issue, *Jones* and the other cited caselaw is of no assistance.[3]

---

[3] WorldWide also cites *Quela v. Payco-General American Credits, Inc.*, No. 99 C 1904, 2000 U.S. Dist. LEXIS 6932 (May 18, 2000). But like *Jones*, the Court in *Quela* found that two persons had "intentionally coerced fraudulent written statements and false deposition testimony." *Id.* at \*16. Similarly in *Burrell v. AT&T Corp.*, No. 03 Civ. 2490 (SAS), 2006 U.S. Dist. LEXIS 93393 (Dec. 21, 2006), the district court dismissed the plaintiff's lawsuit after finding that he "perverted the very system of justice he sought to use to redress what he claimed was a grievous wrong." *Id.* at \*28.

11

### D. Discovery

WorldWide has another arrow in its quiver. It says that evidence not before the jury confirms Mr. Berry's perjury on the question of his marriage to Ms. Chachkova. Specifically, WorldWide refers to the deposition testimony of Abigail Stoddart, Mr. Berry's wife, and the deposition testimony of Paul Russo, Ms. Chachkova's husband. *Def.'s Mot.* at 7-8. Regarding Ms. Stoddart, citing her deposition testimony, WorldWide asserts that "Berry's second wife, Abigail Berry, testified that Berry told her he was previously married to Chachkova." *Def.'s Mot.* at 8. During her deposition on September 24, 2009, however, Ms. Stoddart's testimony on this point was much more equivocal than WorldWide allows:

> Q. Before you were married, were you ever advised by anyone that Mr. Berry had previously married?
>
> A. I was advised by Jack that he had been married.
>
> Q. What did he tell you in that regard?
>
> A. When he told me - - because he denied it once. He told me that there was a woman that he married who was Russian, and I had already known he had been in Russia and the period of time and that sort of thing, and that she was involved in some things in Russia that made her life very difficult. She was in a lot of danger, and so he married her in order to get her out of the country, and it wasn't a real marriage in the sense that he didn't feel married to her and it wasn't really a situation where he like regarded her as his wife than it was to get her out of the country.

*Aff. of Christopher Vrountas*, Ex. 3 *Dep. of Abigail Stoddart* 26:7-27:1 (Docket # 55). Ms. Stoddart's testimony only adds to the confusion; Mr. Berry's admission that he was "married" and his assertion that it "wasn't a real marriage" is generally consistent with his testimony at trial. Furthermore, when she testified at trial, Ms.

Stoddart was separated from Mr. Berry and in the middle of a divorce with him.  *Tr. III.* 111:7-12.

Turning to Paul Russo, in his deposition, Mr. Russo testified that he knew Ms. Chachkova and Mr. Berry were married because they "represented themselves as being married when I met them."  *Aff. of Christopher Vrountas*, Ex. 1 *Dep. of Paul Russo* 7:3-11 (Docket # 55).  Mr. Russo was not asked what he meant by "represented themselves as being married."  Mr. Russo testified that they both wore wedding rings, which is cumulative evidence.  *Id.* 7:12-13.

From the Court's perspective, none of this additional evidence establishes that Mr. Berry committed perjury when he described his relationship with Ms. Chachkova.  First, the combined testimony is too vague to sustain WorldWide's accusation.  Second, only Ms. Stoddart testified before the Court and she was not asked about her husband's alleged marriage to Ms. Chachkova.  Furthermore, although Ms. Stoddart was generally straightforward during her testimony, she was not nearly as forthcoming on cross-examination by Mr. Berry's attorney as on direct examination by WorldWide's attorney and may have been influenced by the fact she was divorcing Mr. Berry.  Third, Mr. Russo's phrase—"represented themselves as married"—is unclear.  It could mean that Mr. Berry and Ms. Chachkova told Mr. Russo they were married; it could also mean that they acted like they were married.  Fourth, neither Ms. Chachkova nor Mr. Russo was called as a live witness.  WorldWide elected not to videotape the depositions of Ms. Chachkova and Mr. Russo and, therefore, the Court has been presented only with transcripts of their

deposition testimony. Where credibility evaluations run to the heart of WorldWide's claims, the presentation of written transcripts and not live witnesses does not enhance WorldWide's position. Finally, the Court's evaluation of this additional evidence must be evaluated in light of the jury verdict in this case, which—as discussed—does not support WorldWide's contentions.

### E. Witness Tampering

Based on a telephone call Mr. Berry made to Mr. Russo on August 15, 2009, WorldWide accuses Mr. Berry of witness tampering. *Def.'s Mot.* at 11-12. To support this accusation, WorldWide refers to the deposition testimony of Paul Russo. *Aff. of Christopher Vrountas* Ex. G *Dep. of Paul Russo* 19:4-22:20. (Docket # 43). Mr. Russo testified that he received a six to seven minute phone call from Mr. Berry on August 15, 2009, that Mr. Berry told him that he was involved in a lawsuit against a company, that he had told the company that Ms. Chachkova and he were never married, that the company was very powerful, that he was trying to keep Ms. Chachkova out of the lawsuit, that he was working undercover investigating the company, and that the company could make problems for Ms. Chachkova's immigration status. *Id.* Mr. Russo also said that Mr. Berry gave him his attorney's name and urged him to call his lawyer. *Id.* Mr. Russo testified that Mr. Berry said that he wanted them to be on the same page. *Id.*

During trial, WorldWide asked Mr. Berry about the call. *Tr. II* 70:2-8. Mr. Berry admitted making the call but denied that he was trying to get Mr. Russo and Ms. Chachkova on the same page. *Id.* He said he contacted Mr. Russo to let him

14

know of the upcoming trial. *Id*. 71:12-14. After some quibbling, Mr. Berry admitted that he had told Mr. Russo that he wanted them to be on the same page, but he denied any negative implication from that phrase. *Id*. 71:15-20.

The substance of WorldWide's allegation about witness tampering was before the jury. The jury had the opportunity to evaluate Mr. Berry's credibility and concluded that WorldWide had not demonstrated that he had defrauded WorldWide. To the extent the jury verdict represented an evaluation of Mr. Berry's credibility and WorldWide's position is inconsistent with the verdict, the Court rejects WorldWide's witness tampering accusation. To the extent the Court is not bound by the verdict, the Court also rejects WorldWide's accusation. The Court has never had an opportunity to assess Mr. Russo's credibility as a live witness. The telephone call was not recorded and its content was not otherwise corroborated. At bottom, the Court is faced with a standoff between two witnesses with markedly different recollections and a scant basis to favor one version over the other.

Based on this evidence, the Court is not convinced that Mr. Berry engaged in witness tampering.

## III. CONCLUSION

The Court DENIES WorldWide Language Resources, Inc.'s Renewed Motion to Sanction Plaintiff for his Perjury and Witness Tampering Concerning a Relevant Trial Issue (Docket # 144).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2011